UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Amy S. Radford,

           Plaintiff,                      Court File No. 12-cv-1998 (SRN/LIB)

    v.                                **REPORT AND RECOMMENDATION**

Kanabec County of Minnesota, et al.,

           Defendants.

      This matter came before the undersigned United States Magistrate Judge upon Defendant Kroschel Township of Minnesota's Motion for Summary Judgment, [Docket No. 37]; Defendant Kanabec County of Minnesota's Motion for Summary Judgment, [Docket No. 45]; Defendant Norman Loren's Motion for Summary Judgment, [Docket No. 56]; and Plaintiff Amy Radford's Cross Motion for Summary Judgment, [Docket No. 65]. These motions have been referred to the undersigned Magistrate Judge for a report and recommendation, (see Orders of Referral [Docket Nos. 42, 53, 64, and 73]), pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on the motions on September 26, 2013. For reasons discussed below, the Court recommends that Defendants' Motions for Summary Judgment, [Docket Nos. 37, 45, and 56], be **GRANTED** in their entirety and Plaintiff's Cross Motion for Summary Judgment, [Docket No. 65], be **DENIED**.

I.    **FACTUAL STATEMENT**[1]

    A.    **General Background**

---

[1] The Minnesota Court of Appeals outlines much of the relevant background for this case in its findings of fact, Radford v. Miller, et al., No. A11-298, 2012 WL 1380262 (Minn. Ct. App. Apr. 23, 2012). Prior to bringing the present federal action, Plaintiff initiated a state court quiet title action against Defendants Airizes Miller and Terry Roemhildt.

The present case concerns undeveloped real property located in Kanabec County, Minnesota. (Compl. [Docket No. 1], ¶ 8). Defendant Airizes Miller held record title to the property after obtaining the title via quitclaim deed from Defendant Terry Roemhildt.[2]  Radford v. Miller, et al., No. A11-298, 2012 WL 1380262, at *1 (Minn. Ct. App. Apr. 23, 2012). Miller recorded the deed with the office of the Kanabec County Recorder on July 12, 2005. Id. In 2008, Miller transferred the land back to Roemhildt, again by quitclaim deed. Id. Roemhildt never recorded this deed. Id. In 2009, Miller sold the land to Plaintiff, via a purchase agreement that served as a contract for deed, and Plaintiff eventually recorded the contract for deed. Id.

Plaintiff and her family visited the property on several occasions to prepare the property to build a permanent home. Id. During one of her visits to the property, Plaintiff found a note from Defendant Terry Roemhildt stating that he owned the land. Id. Plaintiff and Roemhildt had the opportunity to discuss the property, after which Roemhildt faxed Plaintiff the documents he had regarding his quitclaim deed. Id. Plaintiff conducted a title search and determined that the property had been Miller's to transfer. Id.

Following these events, Miller attempted to cancel his purchase agreement/contract for deed with Plaintiff because, according to testimony by Miller in the underlying state court action, Plaintiff had not procured the requisite financing and had therefore breached the contract. Id. However, Miller continued to accept monthly payments from Plaintiff, and Plaintiff continued to develop the property. Id. Roemhildt, at Miller's suggestion, placed "No Trespassing" signs on the property and continued to show-up at the property, prompting Plaintiff to call the Sheriff's Department on several occasions and file her state court quiet title suit. Id.; (Radford Aff. [Docket No. 68], Ex. B Police Reports).

---

[2] Neither Defendant Miller nor Defendant T. Roemhildt have participated in the present summary judgment motions and proceedings.

During the pendency of the state court action, Defendants Miller and Roemhildt – with the assistance of their attorney, Norman Loren, also a Defendant in the present action – recorded additional real estate documents with the County, including a mortgage issued to Roemhildt by Miller and documents attempting to cancel Plaintiff's purchase agreement/contract for deed. (Loren Aff. [Docket No. 61], ¶ 7).

Also during the pendency of the state court law suit, Plaintiff applied for a building permit with Kroschel Township, which the Township denied due to the pending state court suit and the Township's inability to identify the property owner. (Compl. [Docket No. 1], at 8). Plaintiff applied a second time after the close of the state court suit, and eventually Plaintiff procured a building permit. (Id. at 22; Sullivan Aff. [Docket No. 50-1], Ex. O at 82-92).

In the related state court quiet title suit, Plaintiff asserted that 1) she was the rightful owner of the subject property, 2) the defendants Miller and Roemhildt (also defendants in the present case) conspired to commit fraud and deprive her of her rights to the property, and 3) she was entitled to damages based on punitive nuisance, trespass, and invasion of privacy. Radford, 2012 WL 1380262, at *1. The district court held, and the court of appeals affirmed, that Miller had title to the disputed land, subject to the purchase agreement/contract for deed with Plaintiff; that Roemhildt did not intentionally intrude on Plaintiff's seclusion; and that Plaintiff was entitled to $20,000 in damages. Id. at *2.

Prior to the state court action and before Plaintiff obtained the purchase agreement/contract for deed from Miller, the subject property had encountered tax issues. Defendant Miller stopped paying taxes on the property in 2006, and, as a result, the property was placed on Kanabec County's delinquent tax list in early 2007. (Anderson Aff. [Docket No. 49], ¶ 3). Kanabec County followed statutory procedures to initiate the tax forfeiture process. (Id. ¶¶ 4-

6, Exs. D & E). This process started the clock on a five-year redemption period, after which the property would be forfeited and transferred to the State of Minnesota. (Id. ¶ 7).

Plaintiff knew that the property taxes on the subject property were in arrears at the time she signed the purchase agreement/contract for deed. (Sullivan Aff. [Docket No. 50], Ex. O at 25:3-17). Because the property taxes remained delinquent, Plaintiff could not immediately record the purchase agreement/contract for deed demonstrating her ownership rights. (Def. Kanabec County's Mem. in Support of Summary Judgment [Docket No. 47], at 3). On April 30, 2012, Plaintiff contacted the County Auditor's Office to attempt to set-up a payment plan to redeem the property. (Anderson Aff. [Docket No. 49], ¶¶ 6-8).

The five-year redemption period expired in 2012, and the County Auditor's office moved forward with the statutory tax forfeiture process. The County Auditor's Office was aware that Plaintiff had asserted an interest in the subject property due to the state court proceedings and her April 30, 2012, request to enter a payment plan for the back-taxes. (Id.) However, at that time, Plaintiff was not and had never been an owner-of-record of the subject property, and therefore, the County believed she could not obtain a payment plan.

On September 7, 2012, the County Auditor entered a Certificate of Forfeiture, thereby completing the forfeiture process. (Id. ¶ 11, Ex. J). However, after discovering an error in the forfeiture process, namely, that Plaintiff should have been allowed to confess judgment and enter into a payment plan, the County Auditor submitted an Application for Cancellation of Forfeiture and the Minnesota Department of Revenue cancelled and reversed the forfeiture. (Anderson Aff. [Docket No. 49], ¶ 13). Although the cancellation allowed Plaintiff the opportunity to now enter into a payment plan, she has yet to actually do so. (Id. ¶ 16). The record as it currently exists indicates that the subject property has not, as of this time, been forfeited.

4

Plaintiff filed the present suit on August 14, 2012. Plaintiff's Complaint contains five Counts, alleged as follows:

1. Count I: General claim pursuant to 42 U.S.C. § 1983, alleged against Defendants Kanabec County, Kroschel Township, and Norman Loren;

2. Count II: Fifth Amendment Due Process and Takings claim, alleged against Kanabec County, Kroschel Township, and Norman Loren;

3. Count III: Intentional Misrepresentation, alleged against Kanabec County, Kroschel Township, and Norman Loren;

4. Count IV:  Slander of Title, alleged against Kanabec County, Norman Loren, Terry F. Roemhildt, Rhys Roemhildt, and Airizes Miller;

5. Count V: Trespassing, alleged against Terry F. Roemhildt, Rhys Roemhildt, and Airizes Miller.

(Compl. [Docket No. 1], at 2-3; Pl.'s Mem. in Support of Summary Judgment [Docket No. 67], at 1).

### B.    Factual Allegations Concerning Kroschel Township

With respect to Defendant Kroschel Township, Plaintiff alleges that the Township has 1) improperly denied Plaintiff a building permit, 2) misrepresented "internal procedures" for obtaining a building permit, 3) refused to address Rhys Roemhildt's "clear violation of their ordinance," and 4) ignored Plaintiff's civil records request. (Pl.'s Mem. [Docket No. 67], at 3). After reviewing the record and all submissions herein, the Court understands Plaintiff's factual allegations against Kroschel Township as follows:

Count I: Plaintiff's 42 U.S.C. § 1983 Claim

In both her Complaint and her deposition testimony, Plaintiff identifies the Township's initial denial of her building permit as grounds for her Section 1983 claim. (Sullivan Aff. [Docket No. 50-1], Ex. O at 75:7-78:5).

Count II: Plaintiff's Fifth Amendment Claim

Plaintiff's allegations against the Township in support of her Fifth Amendment claim are virtually identical to the allegations in support of her Section 1983 claim – namely, that the Township's initial denial of Plaintiff's building permit violated Plaintiff's Fifth Amendment Due Process rights. (Id. at 79:15-23). Plaintiff alleges that the Township violated her due process rights by denying her building permit and incorrectly directing Plaintiff to the County Attorney's Office for further assistance regarding obtaining a building permit. (Id. at 85:4-15).

In her deposition testimony, Plaintiff admits that she offers no evidence indicating that the Township was ever involved in seizing her property. (Id. at 89:13-22).

Count III: Plaintiff's Intentional Misrepresentation Claim

In support of her claim for intentional misrepresentation against the Township, Plaintiff alleges that the Township "misrepresented procedures" with regard to the process by which she could obtain a building permit. (Id. at 85-91).

In her deposition testimony, Plaintiff stands by her generalized, largely unsupported allegations that the entire town, including the Township's board members, were familiar with Defendant Terry Roemhildt and "did not want to issue a building permit because they knew that there was trouble with anything related to Terry Roemhildt in the Township." (Id. at 83:10-15). However, Plaintiff offers no evidence of this motive or the knowing falsity of statements on the part of the Township, outside of her own suppositions:

> Q: Do you have any evidence, other than your suspicions, that Kroschel Township denied the building permit because they were wanting to support a forfeiture of the real estate?
>
> A: The evidence that I have from Kroschel Township is denying my building permit and saying that the issue of it was in the County Attorney's office. I'm not sure if they wanted to forfeit the property, but they certainly didn't want to do anything, or they didn't know what to do. So that's why I think they told me to go through the County Attorney's Office. And then the County Attorney, after that, had to write a letter to me and to the Township members stating that no, it's your sole discretion to provide a building permit.

(Id. at 84:25-85:15).

The Court finds no other factual allegations offered by Plaintiff in support of her contentions against Defendant Kroschel Township.

### C.  Factual Allegations Concerning Kanabec County

In her memorandum, Plaintiff argues that Kanabec County has 1) withheld public information, 2) knowingly allowed slander of Plaintiff's property title by recording "forged and fraudulent" property documents from Defendants Miller and T. Roemhildt, 3) allowed trespass, theft, and vandalism on Plaintiff's property, 4) composed false police reports, 5) allowed Defendants Miller and T. Roemhildt to falsely claim IFP, 6) refused to prosecute Defendants Loren, Miller, and T. Roemhildt, 7) assisted in the initial delay of the issuance of Plaintiff's building permit, 8) improperly refused to accept tax payments from Plaintiff, and 9) forfeited Plaintiff's property to the State of Minnesota. (Pl.'s Mem. [Docket No. 67], at 2). The Court understands Plaintiff's factual allegations against the County as follows:

Count I: Plaintiff's 42 U.S.C. § 1983 Claim

In her deposition testimony, Plaintiff specifically identifies two means by which the County has deprived Plaintiff of her constitutional rights: 1) the County's initiation of tax

forfeiture proceedings against her property, and 2) the County's refusal to "follow through" on criminal reports Plaintiff filed regarding the Roemhildts.[3] (Sullivan Aff. [Docket No. 50], Ex. O at 8:19-9:25). Plaintiff's deposition testimony identifies the County's alleged deprivation of her rights to her property by initiating tax forfeiture proceedings as the primary basis for her Section 1983 claim. (Id.)

Count II: Plaintiff's Fifth Amendment Claim

In her deposition testimony, Plaintiff again specifically identifies the County's tax forfeiture actions as grounds for a Fifth Amendment violation:

> Q: Okay. And then Count Two states that the defendants attempted to deprive you of liberty and property without due process of law. Can you just explain how you see the context of that claim, what that claim is about?
>
> A: That mainly is about the forfeiture process taken by the County and their lack of notification, to notify me as an interested party in the property.

(Id. at 10:1-9; see also id. at 10:16-23). Aside from her allegations that the County's tax forfeiture actions deprived Plaintiff of her Fifth Amendment Due Process rights, Plaintiff offers no other facts in support of Count II against the County. As is the case with Plaintiff's allegations concerning Kroschel Township, Plaintiff's allegations in support of Counts I and II against the County are largely the identical.

Count III: Plaintiff's Intentional Misrepresentation Claim

As the basis for Plaintiff's allegation of intentional misrepresentation against the County, Plaintiff identifies three "misrepresentations" by the County: 1) the Court Administrator's refusal to disclose the address of Airizes Miller, 2) statements by an investigator from the Sheriff's

---

[3] In her Answers to Kanabec County's Interrogatories, Plaintiff states, "Kanabec County allowed Terry and Rhys Roemhildt to continually trespass as described in multiple police reports, as they were told to leave yet they continually returned and no action was taken." (Sullivan Aff. [Docket No. 50-3], Radford Depo. Ex. 13 Answer to Interrogatory 7).

Department that indicated the County Attorney would refer Plaintiff's various criminal complaints to a neighboring county, and 3) other general statements confusing Plaintiff as to which government entity was responsible for issuing building permits. (Id. at 11:14-14:9, Radford Depo. Ex. 13 Answer to Interrogatory 7). Plaintiff also identifies the County's refusal to allow Plaintiff to pay taxes on the property as an intentional misrepresentation. (Id. at 14-15).

Count IV: Plaintiff's Slander of Title Claim

In support of her slander of title claim against the County, Plaintiff asserts that the County slandered the title to Plaintiff's property by recording the mortgage between Miller and Roemhildt before ascertaining the truth of the statements made in the mortgage documents, and that, as a result, the County Recorder's Office should have rejected the mortgage document. (Id. at 18:20-19:10).

The Court finds no other factual allegations offered by Plaintiff in support of her contentions against Defendant Kanabec County.

**D.      Factual Allegations Concerning Norman Loren**

Regarding Defendant Loren, Plaintiff generally alleges that he slandered Plaintiff's property title by drafting and recording the Miller/Roemhildt mortgage. (Pl.'s Mem. [Docket No. 67], at 3). Plaintiff further claims that Defendant Loren, "acting out of cronyism, ha[s] not brought the Subject Property to the attention of the Court, as the asset represents the proceeds of Terry Roemhildt's criminal offense," and that these actions have deprived Plaintiff of her civil rights. (Id.) The Court understands Plaintiff's factual allegations in support of her four claims against Defendant Loren as follows:

Count I: Plaintiff's 42 U.S.C. § 1983 Claim

Plaintiff claims to direct her Section 1983 claim against Loren in his official capacity as a state actor; however, she does not offer any facts in support of her contention that Loren acted in his official capacity. (Id. at 4). Rather, Plaintiff, in her deposition, pointed to Defendant Loren's representation of Defendant T. Roemhildt in the related state court action as providing Defendant Roemhildt with "an unfair advantage" in the litigation, and thus depriving Plaintiff of her rights. (Sullivan Aff. [Docket No. 50-1], Ex. O at 97:23-100:7).

Count II: Plaintiff's Fifth Amendment Claim

As with her Section 1983 claim, Plaintiff points to Defendant Loren's representation of Defendant Roemhildt and his role in assisting Defendants Roemhildt and Miller prepare a mortgage transferring the subject property from Miller to Roemhildt during the pendency of the underlying state court action as a violation of Plaintiff's Fifth Amendment Due Process rights. (Id. at 100-105).

Count III: Plaintiff's Intentional Misrepresentation Claim

In support of her claim for intentional misrepresentation against Defendant Loren, Plaintiff alleges that Defendant Loren's role in drafting a mortgage (conveying the subject property from Miller to Roemhildt) that stated that the property was "free from any and all encumbrances" constitutes intentional misrepresentation. (Id. at Radford Depo. Ex. 13 Answer to Interrogatory 7).

Count IV: Plaintiff's Slander of Title Claim

Plaintiff refers to the same set of factual allegations to support Count IV against Defendant Loren, namely, that his role in preparing the mortgage conveying her property from

Miller to Roemhildt, containing the phrase "free from any and all encumbrances," constitutes slander of title. (Id.)

> In her Answer to Kanabec County's Interrogatory 7, Plaintiff states:
>
>> Also, while the civil trial was still an open matter, on May 24, 2010, right after the pretrial conference, Loren, Miller, and Roemhildt composed a "mortgage in which stated the land was "free from any and all encumbrances." Mr. Loren was just hired to defendant Terry and Michelle Roemhildt in a quiet title case, in essence, a land dispute – so Loren, being only an attorney and not a Judge, could not determine weather or not the land was "free from any and all encumbrances."

(Sullivan Aff. [Docket No. 50-3], Radford Depo. Ex. 13 Answer to Interrogatory 7). Plaintiff goes on to answer, "Mr. Loren, acting out of cronyism and sympathy for the Roemhildts' property forfeiture case that he conducted, intentionally slandered my property title by composing and recording this fraudulent mortgage." (Id.)

The Court finds no other factual allegations offered by Plaintiff in support of her contentions against Defendant Loren.

### E.    The Court Construes Plaintiff's Counts I and II as a Single Claim

Given the facts Plaintiff offers in support of Counts I and II against each moving Defendant, the fact that she relies on the same set of factual allegations in support of both counts, the Court has determined that Plaintiff's Counts I and II work in concert to create a single cause of action. Plaintiff's Section 1983 claim serves as the vehicle by which Plaintiff brings her Fifth Amendment claim against the moving Defendants.[4]

---

[4] 42 U.S.C. § 1983 provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." 42 U.S.C. § 1983. Section

Defendants Kroschel Township, Kanabec County, and Norman Loren have each independently moved for summary judgment. (Def. Kroschel Township's Motion for Summary Judgment [Docket No. 37]; Def. Kanabec County's Motion for Summary Judgment [Docket No. 45]; Def. Norman Loren's Motion for Summary Judgment [Docket No. 56]). In response, Plaintiff filed her own Motion for Summary Judgment, [Docket No. 65].[5]

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the evidence demonstrates no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the nonmoving party may not rest on mere allegations or denials in her

---

1983 serves as a vehicle for alleging constitutional violations against state actors. See, e.g., Henley v. Brown, 686 F.3d 634 (8th Cir. 2012) (wherein plaintiff, via a Section 1983 action, alleged violations of the Fourth and Fifth Amendments by the city board of police commissioners, among others).

[5] Given the nature of Plaintiff's Memorandum in Support of Summary Judgment, [Docket No. 67], and applying the liberal interpretation allowed pro se parties, see Haines v. Kerner, 404 U.S. 519 (1972), the Court construes Plaintiff's Motion for Summary Judgment as a motion in opposition to Defendants' Motions for Summary Judgment.

pleadings, but must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

The movant is entitled to summary judgment when the nonmoving party has failed to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

"Naked assertions, unsubstantiated by the record" made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton v. University Healthcare Sys., L.L.C., 136 Fed. Appx. 596 (5th Cir. 2005) (unpublished decision); see also Simms v. McDowell, 2009 WL 3160353, at *5 (W.D. Ky. Sept. 25, 2009) (holding that speculation that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment"). "A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert v. Ford. Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin County Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Id. at 473-74.

The Court is aware of its duty to construe pro se pleadings liberally; however, "[a]lthough pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

## III.   DISCUSSION

As set forth in Section II, supra, the moving Defendants are entitled to summary judgment if Plaintiff has failed to "establish the existence of an element essential to [Plaintiff's]

case, and on which [Plaintiff] will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Although the Court views the evidence in the light most favorable to the nonmoving party on a motion for summary judgment, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Benford v. City of Minneapolis, No. 10-cv-4539 (ADM/LIB), 2012 WL 6200365, at *3 (D. Minn. Dec. 12, 2012) (citing Krenik v. Cnty. of Le Sueuer, 47 F.3d 953, 957 (8th Cir. 1995)).

Here in the present case, Plaintiff has not offered any significant probative evidence tending to support the allegations in her Complaint, and instead, she offers only legal conclusions and self-serving affidavits and affirmations. Plaintiff has therefore failed to offer material, admissible facts in support of all essential elements of each of her claims. The Court recommends that all three moving Defendants are entitled to summary judgment on all counts.

### A. Defendant Kroschel Township's Motion for Summary Judgment

### i. Plaintiff fails to offer facts in support of the essential elements of a Section 1983 claim for a violation of the Fifth Amendment.

As an initial point, the Court construes Plaintiff's Counts I and II as a single allegation against the Township, namely, an action under 42 U.S.C. § 1983 for violations of the Fifth Amendment by a government entity. (See Section II.E, supra).

In Monell v. Dep't of Soc. Servs. of City of New York, the United States Supreme Court held that a municipality – such as Kroschel Township – is subject to liability pursuant to 42 U.S.C. § 1983 only when the alleged violation of the plaintiff's federally protected right can be

14

attributed to the enforcement of a municipal custom or policy.[6] 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983"). Municipalities cannot be held liable under Section 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." Anderson v. City of Hopkins, 805 F. Supp. 2d 712, 722-23 (D. Minn. 2011) (citing Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003) (internal citations omitted); Sitzes v. City of W. Memphis Ark., 606 F.3d 461, 470 (8th Cir. 2010) (without any underlying constitutional violation, a plaintiff cannot maintain a claim against a local government)).

Accordingly, to survive summary judgment on a Section 1983 Monell claim as alleged against a government entity, a plaintiff must offer facts sufficient to establish (1) the existence of a municipal custom or policy (2) that is the "moving force" behind a constitutional violation. Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). Under 42 U.S.C. § 1983, a municipality may not be held vicariously liable for the unconstitutional acts of employees – it may only be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. Id.; see also Doe v. Washington County, 150 F.3d 920, 922 (8th Cir. 1998); Board of Comm'rs v. Brown, 520 U.S. 397, 400 (1997) (holding that only "deliberate" action by a municipality can meet the "moving force" requirement).

The Eighth Circuit does not use the terms "custom" and "policy" interchangeably when engaging in a Monell analysis. Rather, "a 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding

---

[6] Plaintiff does not implicate any Kroschel Township individual government actors.

such matters." <u>Mettler</u>, 165 F.3d at 1204 (<u>citing</u> <u>Ware v. Jackson County</u>, 150 F.3d 873, 880 (8th Cir. 1998) (internal citations omitted)).

A municipal custom to which constitutional violations may be attributed, on the other hand, requires proof of three elements:

1) The existence of a continuing, persistent, widespread pattern of unconstitutional misconduct by the County's employees
2) Deliberate indifference to or authorization of unconstitutional conduct by the County's policymaking officials after notice to the officials of the purported misconduct; and
3) That Plaintiff was injured by acts pursuant to such policy (the "moving force" behind the constitutional violations).

<u>Mettler</u>, 165 F.3d at 1204 (internal citations omitted).

Plaintiff has failed to identify a municipal policy or custom by the Township to which Plaintiff's alleged constitutional violations may be attributed. Even construing Plaintiff's factual allegations liberally, nothing Plaintiff has presented to the Court even remotely identifies or implicates a Township "official policy" involved in the alleged deprivation of Plaintiff's Fifth Amendment rights, nor does she allege a custom or "widespread pattern of unconstitutional misconduct." Plaintiff merely, and conclusory, alleges that Kroschel Township deprived Plaintiff of her constitutional rights by initially denying her building permit, but at no point does Plaintiff implicate an official custom or policy attributable to the Township as the basis for the denial.

The closest Plaintiff comes to alleging the existence of a municipal custom or policy is when she alleges that the "action, re-actions, and non-actions" by the government Defendants implicates a "custom" of "ignoring the law." (Pl.'s Mem. [Docket No. 67], at 5-6). However, this assertion by Plaintiff is a vague legal conclusion. At no point does Plaintiff specifically cite to exhibits, the record, affidavits, or any other source of factual support for her conclusory allegations, nor does Plaintiff offer facts – the who, what, why, when, or how – indicating that a

Kroschel Township policy or custom played a role in her alleged unconstitutional deprivation of rights.

Without admissible factual allegations sufficient to create a genuine issue of fact as to the existence of a municipal custom or policy to which constitutional violations may be attributed, Plaintiff has failed to offer facts in support of an essential element of her <u>Monell</u> claim. As a result, her claim necessarily fails, <u>see</u> <u>Celotex</u>, 477 U.S. at 322-23, and Kroschel Township is entitled to judgment as to Counts I and II.[7]

Because Plaintiff has failed to offer material facts sufficient to establish a Section 1983 <u>Monell</u> claim, the Undersigned recommends **GRANTING** Defendant Kroschel Township's Motion for Summary Judgment with respect to Plaintiff's Counts I and II.

**ii.      Plaintiff has failed to offer facts in support of the essential elements of intentional misrepresentation.**

To survive summary judgment on a claim for intentional misrepresentation, Plaintiff must offer facts sufficient to demonstrate each of the following essential elements:

1)  The Township made a representation;
2)  That was false;
3)  Having to do with a past or present fact;
4)  That is material;
5)  And susceptible of knowledge;
6)  That the representor knows to be false or is asserted without knowing whether the fact is true or false;
7)  With the intent to induce the other person to act;
8)  And the person in fact is induced to act;
9)  In reliance on the representation and;
10) That the plaintiff suffered damages;
11) Attributable to the misrepresentation.

---

[7] Even assuming Plaintiff were able to allege sufficient facts to implicate a municipal custom or policy, Plaintiff has not alleged facts sufficient to create a genuine issue of fact as to whether the Township violated her constitutional rights. Plaintiff conclusorily claims that the Township violated her Fifth Amendment rights. However, this, too, is a legal conclusion, and Plaintiff fails to allege facts demonstrating a violation of her Fifth Amendment Due Process rights. Plaintiff offers no factual allegations to support how or why an initial denial of her building permit by the Township constitutes a constitutional violation of the Fifth Amendment.

Jane Doe 43C v. Diocese of New Ulm, 787 N.W.2d 680, 686 (Minn. Ct. App. 2010). "A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading." In re Digital Res., LLC, 246 B.R. 357, 367 (B.A.P. 8th Cir. 2000) (emphasis added) (citing M.H. v. Caritas Family Services, 488 N.W.2d 282, 289 (Minn. 1992)).

Construing Plaintiff's factual allegations liberally, Plaintiff generally alleges that the Township misrepresented its procedures for obtaining a building permit, and that individuals working for the Township misrepresented the proper means – and proper office – by which to obtain a building permit. (See Section II.B, supra). However, Plaintiff offers no admissible evidence to suggest that the Township or its representatives made any false statements of fact. Plaintiff fails to offer facts sufficient to establish this vital element of a claim for intentional misrepresentation.

Even assuming a Township employee did make a material misrepresentation of fact regarding the proper procedure for obtaining a building permit, nothing in Plaintiff's offered factual allegations suggests that the representation – whatever it may have been – was made specifically with knowledge of its falsity and with the intention to induce some action on Plaintiff's part.

A claim for intentional misrepresentation requires facts indicating fraudulent intent. Florenzano v. Olson, 387 N.W.2d 168, 174 (Minn. 1986). "Fraudulent intent" refers to the "misrepresenter's knowledge of the untrue character of his or her representations." Id. at 173 n. 2. "Fraudulent intent is, in essence, dishonesty or bad faith." Id. at 173. Fraudulent intent has also been characterized as intent to "deceive" or "mislead." See Caritas Family Services, 488 N.W.2d at 289 (in the absence of evidence that the misrepresentations were intended to mislead the

plaintiffs, evidence was insufficient as a matter of law to establish intentional misrepresentation).

As the Supreme Court of Minnesota has explained:

> There is no doubt of fraudulent intent when the misrepresenter knows or believes the matter is not as he or she represents it to be. Fraudulent intent is also present when a misrepresenter speaks positively and without qualification, *but either is conscious of ignorance of the truth, or realizes that the information on which he or she relies is not adequate or dependable enough to support such a positive, unqualified assertion.*

Florenzano, 387 N.W.2d at 173 (emphasis added).

Plaintiff offers no admissible facts to support this element of intentional misrepresentation. As a result, there is no genuine issue of material fact, Plaintiff's intentional misrepresentation claim necessarily fails, and Kroschel Township is entitled to judgment as a matter of law as to Count III.[8]

Because Plaintiff has failed to offer material, admissible facts sufficient to establish that Kroschel Township made an intentionally false representation of fact, the Undersigned recommends **GRANTING** Defendant Kroschel Township's Motion for Summary Judgment with respect to Plaintiff's Count III, Intentional Misrepresentation.

### B. Defendant Kanabec County's Motion for Summary Judgment

### i. Plaintiff fails to offer facts in support of the essential elements of a Section 1983 claim for a violation of the Fifth Amendment.

As articulated above, to survive summary judgment on her Section 1983 Monell claim, Plaintiff must offer facts sufficient to establish the existence of a municipal policy or custom to which a constitutional violation and/or deprivation may be attributed. See Section III.A.i, supra.

---

[8] Additionally, even construing Plaintiff's allegations liberally to make out a negligent misrepresentation claim, landowners are charged with knowledge of the law regulating building permits. Snyder v. City of Minneapolis, 441 N.W.2d 781, 787 (Minn. 1989). Minnesota does not recognize a cause of action against government employees for negligent misrepresentation of law except under very limited circumstances. (Id.) Because the applicable building permit ordinance is clear on its face regarding (1) the steps necessary to obtain a building permit and (2) the appeal process, and because the ordinance was readily available to Plaintiff, she cannot sustain a negligent misrepresentation claim against the Township. (Id.)

As with Plaintiff's allegations concerning Kroschel Township, Plaintiff here, too, has failed to offer any admissible facts implicating a policy or custom of Kanabec County violating Plaintiff's constitutional rights. As articulated in Section II.C, supra, Plaintiff identifies the County's initiation of tax forfeiture proceedings as a violation of her Fifth Amendment Due Process rights. However, Plaintiff does not identify an official Kanabec County policy or pattern of misconduct sufficient to constitute an unconstitutional municipal policy or custom. Rather, Plaintiff conclusorily alleges that the County's tax forfeiture actions – with respect to the property she had a purchase agreement/contract for deed on – unconstitutionally violated her property rights sufficient to prevail on a Section 1983 Monell claim.

Plaintiff has failed to even sufficiently allege a violation of her constitutional rights. Although the County initially incorrectly began tax forfeiture proceedings against Plaintiff's property without providing requisite notice to Plaintiff, she has admitted – both at the motion hearing and in her deposition testimony – that the tax forfeiture proceedings were reversed and that no takings, in violation of the Fifth Amendment, occurred. (Sullivan Aff. [Docket No. 50-1], Ex. O at 62:3-63:6).[9]

In the context of property tax forfeiture, due process merely requires the government provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Jones

---

[9] In her deposition, Plaintiff confirmed that after the cancellation of the tax forfeiture, she was properly given the opportunity to partake in a payment plan to repay the back taxes on the property. However, she has, to date, chosen to not enter into such an agreement at this time, nor does she intend to enter into such an agreement with the County in the foreseeable future:

> Q: And you are aware that if no one enters into an agreement to pay the taxes, then it goes back into tax forfeit within a statutory period of time, right?
>
> A: Yes, I'm aware of that. My family and I at this point don't want to live in Kanabec County.

(Sullivan Aff. [Docket No. 50-1], Ex. O at 63:1-6). At the motion hearing, counsel for the County represented that the property has not yet been re-forfeited and that the County waits on the resolution of this suit.

v. Flowers, 547 U.S. 220, 226 (2006). In Jones, the Supreme Court identified the Minnesota tax

forfeiture statute as one affording adequate notice to interested parties. Plaintiff offers no factual

allegations to suggest how or why the County's tax forfeiture actions – and subsequent

correction thereof – amount to a violation of her Fifth Amendment constitutional rights.[10]

Because Plaintiff has failed to offer material, admissible facts sufficient to establish a

Section 1983 Monell claim, the Undersigned recommends **GRANTING** Defendant Kanabec

County's Motion for Summary Judgment with respect to Plaintiff's Counts I and II.

>    **ii.    Plaintiff has failed to offer facts in support of the essential elements of intentional misrepresentation.**

As set forth in Section III.A.ii, supra, the essential elements of intentional

misrepresentation are:

1)  A representation;
2)  That was false;
3)  Having to do with a past or present fact;
4)  That is material;
5)  And susceptible of knowledge;
6)  That the representor knows to be false or is asserted without knowing whether the fact is true or false;
7)  With the intent to induce the other person to act;
8)  And the person in fact is induced to act;
9)  In reliance on the representation and;
10) That the plaintiff suffered damages;
11) Attributable to the misrepresentation.

Jane Doe 43C, 787 N.W.2d at 686.

---

[10] Further, even construing liberally Plaintiff's allegation that the County violated her constitutional rights by failing to prosecute the Roemhildt Defendants for various alleged property crimes, Plaintiff again fails to allege sufficient facts to support a constitutional violation by the County. With respect to Plaintiff's allegation that the County has failed to "protect" her property interests, the Supreme Court has long recognized that due process does not require "the State to protect the life, liberty, and property of its citizens." DeShaney v. Winnebago County Soc. Servs., 489 U.S. 189, 195 (1989). "[T]he benefit that a third party may receive from having someone arrested for a crime generally does not trigger protection under the Due Process Clause, neither in its procedural or its substantive manifestations." Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005). Plaintiff offers no facts sufficient to implicate a constitutional violation by the County for failure to prosecute.

As described in Section II.C, supra, Plaintiff identifies several bases for her intentional misrepresentation claim against the County:

1) the Court Administrator's refusal to disclose the address of Airizes Miller;

2) statements by an investigator from the Sheriff's Department that indicated the County Attorney would refer Plaintiff's various criminal complaints to a neighboring county;

3) other general statements confusing Plaintiff as to which government entity was responsible for issuing building permits; and

4) the County's refusal to allow Plaintiff to pay taxes on the property to save it from forfeiture.

Plaintiff has failed to identify with sufficient admissible factual support any misrepresentation by the County necessary to establish a claim for intentional misrepresentation. Plaintiff does not identify any specific intentional misrepresentations of fact by any representative of Kanabec County. Rather, Plaintiff's allegations, at best, vaguely reference general opinion statements and/or advice by Kanabec County employees. Even if we assume *arguendo* that Plaintiff has produced sufficient facts to support the existence of each of the above-described occurrences of misrepresentations, Plaintiff offers no facts indicating that the County made material misrepresentations of fact. For example, with regard to the building permit procedures, Plaintiff simply contends, "Someone had to be giving a false statement if there was no answer to the question. They [the County Attorney's Office and other county agencies] were shifting responsibility back and forth when asked a direct question." (Sullivan Aff. [Docket No. 50-1], Ex. O at 13-15).

Construing Plaintiff's allegations liberally, the closest Plaintiff comes to identifying a misrepresentation of fact is when she alleges that the County misrepresented her ability (or, as

the County represented, inability) to pay back taxes on the property as a means of saving it from tax forfeiture. However, these statements by the County constitute misstatements of law, rather than of fact, because they concerned the Minnesota tax forfeiture statutes. Under Minnesota law, misstatements of law <u>do not constitute</u> misrepresentations of fact necessary to support a claim of intentional misrepresentation. Misrepresentations of law are not actionable against municipalities. <u>Mohler v. City of St. Louis Park</u>, 643 N.W.2d 623, 647 (Minn. Ct. App. 2002).

Finally, even if Plaintiff offered facts sufficient to identify (1) a material misstatement (2) of <u>fact</u>, she has failed to identify any facts indicating that such misrepresentations were made with the requisite knowledge and intent. <u>See</u> Section III.A.ii, <u>supra</u>. In fact, Plaintiff admits that she is virtually unable to offer any material facts sufficient to indicate that the alleged misrepresentation concerning her ability to pay taxes on her property was <u>intentionally false</u>:

> Q: But my question is: What information do you have that the County Auditor knew that what she was telling you was false at the time that you were told you could not make payments on the property?
>
> A: Well, I object to that question because she gave me an answer that simply denied my right to a payment plan. I had already sent over evidence of my ownership to the Township, and she simply could have gone to Court Administration to verify that in that County Court, I had just been edified as the owner of the property.

(<u>Id.</u> at 15:12-23).

Because Plaintiff has failed to offer material, admissible facts sufficient to establish that Kanabec County made an intentionally false representation of fact, the Undersigned recommends **GRANTING** Defendant Kanabec County's Motion for Summary Judgment with respect to Plaintiff's Count III, Intentional Misrepresentation.

  **iii. Plaintiff has failed to offer facts in support of the essential elements of slander of title.**

To survive summary judgment on a slander of title claim, a plaintiff must offer facts sufficient to demonstrate four essential elements:

1) That there was a false statement concerning the real property owned by the plaintiff;
2) That the false statement was published to others;
3) That the false statement was published maliciously; and
4) That the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.

Hayes-Broman v. J.P. Morgan Chase Bank, N.A., 724 F. Supp. 2d 1003, 1016 (D. Minn. 2010) (citing Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000)).

"Minnesota requires a showing of special damages in slander of title actions." Paidar, 615 N.W.2d at 279 (citing Wilson v. Dubois, 29 N.W. 68, 69 (Minn. 1886)). Special damages are an essential element of a slander of title claim, the "gist" of the action such that without special damages the action cannot be maintained. See Brinkman v. Bank of America, N.A., 914 F. Supp. 2d 984, 1002 (D. Minn. 2012) (citing Quevli Farms of Lakefield v. Union Sav. Bank & Trust Co. of Davenport, Iowa, 226 N.W. 191, 192 (Minn. 1929)).

Plaintiff has failed to allege any special damages in connection with her slander of title claim against Kanabec County. Plaintiff has failed to identify – much less produce admissible facts in support of – any special damages she has incurred in connection with her slander of title allegations, namely, her allegation that Kanabec County committed slander of title upon recording the Miller/Roemhildt mortgage.

As a result, Plaintiff has failed to offer facts in support of all essential elements of her claim for slander of title, and the Undersigned recommends **GRANTING** Defendant Kanabec County's Motion for Summary Judgment with respect to Plaintiff's County IV, Slander of Title.

 **C.** **Defendant Norman Loren's Motion for Summary Judgment**

 **i.** **Plaintiff fails to offer facts in support of the essential elements of a Section 1983 claim for a violation of the Fifth Amendment.**

"Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'" Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982). Where a plaintiff challenges private action not attributable to any state decision or made with the authority of state officials, the plaintiff does not state a cause of action pursuant to Section 1983. Id.

In the present case, Plaintiff does not challenge any action taken by Defendant Loren under the color of any state authority. Plaintiff's factual allegations against Defendant Loren exclusively concern his role as a private attorney representing Defendant Roemhildt in the underlying state court quiet title action, and his role as a private attorney assisting in drafting a mortgage regarding the subject property between Defendant Miller and Defendant T. Roemhildt. Defendant Loren's actions as a private attorney are not under color of law. As a result, Plaintiff cannot maintain a Section 1983 action against Defendant Loren.

The closest Plaintiff comes to implicating Defendant Loren in any official capacity is Plaintiff's mention of Defendant Loren's unrelated role as Kanabec County Examiner of Titles; however, Plaintiff offers no admissible facts implicating action by Defendant Loren in that official capacity in this present action. In his limited role as the County Examiner of Titles, Defendant Loren examines titles for Torrens/registration proceedings in Kanabec County. (Loren Aff. [Docket No. 61], ¶ 2). The property at issue is not a registered property; as a result, Defendant Loren was never involved in the present case in his official capacity. (Id.)

"[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 421-22 (8th Cir. 2007)

(internal citations omitted). Because Plaintiff has failed to implicate action or wrongdoing by Defendant Loren in any official capacity as a state actor, her Section 1983 claim necessarily fails, and the Undersigned recommends **GRANTING** Defendant Norman Loren's Motion for Summary Judgment with respect to Plaintiff's Counts I and II.

### ii.     Plaintiff has failed to offer admissible facts in support of the essential elements of intentional misrepresentation.

In support of her claim for intentional misrepresentation against Defendant Loren, Plaintiff alleges that Defendant Loren assisted in drafting a mortgage (as between Defendants Miller and T. Roemhildt) that falsely stated that the property at issue was "free from any and all encumbrances." (Sullivan Aff. [Docket No. 50-3], Radford Depo. Ex. 13 Answer to Interrogatory 7).

Again, per Section III.A.ii, supra, the essential elements of intentional misrepresentation are:

1)  **A representation;**
2)  That was false;
3)  Having to do with a past or present fact;
4)  That is material;
5)  And susceptible of knowledge;
6)  That the representor knows to be false or is asserted without knowing whether the fact is true or false;
7)  **With the intent to induce the other person to act;**
8)  **And the person in fact is induced to act;**
9)  In reliance on the representation and;
10) That the plaintiff suffered damages;
11) Attributable to the misrepresentation.

Jane Doe 43C, 787 N.W.2d at 686 (emphasis added).

However, Plaintiff offers no admissible facts identifying any representations made by Defendant Loren to Plaintiff upon which she relied. Plaintiff does not identify any conversations or communications she had with Defendant Loren, but instead, she relies exclusively on the

Miller/Roemhildt mortgage as evidence of Loren's intentional misrepresentation. Plaintiff offers no admissible facts indicating that Loren made the representation that the property was free of all encumbrances to her; rather, Plaintiff only offers that the language is contained in the Miller/Roemhildt mortgage document Loren assisted in drafting.

Even if the mortgage document could be somehow construed as a representation from Defendant Loren to Plaintiff, she offers no allegations or admissible facts attributing the requisite knowledge or intent of falsity to Defendant Loren. The only evidence in the present record is to the contrary: Loren has testified that he assisted in drafting the mortgage without knowledge that Plaintiff had previously recorded an Affidavit of Identity on the property. (Loren Aff. [Docket No. 61], ¶ 7).

Finally, the Plaintiff has neither alleged nor offered any admissible fact to suggest that she was induced to reasonably rely on the purportedly false representation in the mortgage to her detriment.

Because Plaintiff has failed to offer material, admissible facts sufficient to establish that Defendant Norman Loren made any intentionally false representations to Plaintiff, or that she reasonably relied thereon, the Undersigned recommends **GRANTING** Defendant Norman Loren's Motion for Summary Judgment with respect to Plaintiff's Count III, Intentional Misrepresentation.

### iii.   Plaintiff has failed to offer facts in support of the essential elements of slander of title.

As discussed in Section IV.B.iii, <u>supra</u>, special damages attributable to the publication of false statements regarding the title to property is an essential element to a slander of title claim. As is the case with regard to Defendant Kanabec County, Plaintiff fails to offer any admissible

facts identifying, much less establishing, special damages in relation to Defendant Loren's involvement in drafting the mortgage between Defendant Miller and Defendant T. Roemhildt.

As a result, Plaintiff has failed to offer facts in support of all essential elements of her claim for slander of title, and the Undersigned recommends **GRANTING** Defendant Norman Loren's Motion for Summary Judgment with respect to Plaintiff's Count IV, Slander of Title.

### D. Remaining Claims and Defendants

In light of the foregoing recommendations that all three moving Defendants be granted summary judgment with respect to all of Plaintiff's claims, only three Defendants remain in the suit: Defendants Terry Roemhildt, Rhys Roemhildt, and Airizes Miller. Plaintiff's claims against the Roemhildts and Miller Defendants are all state law claims: slander of title and trespassing. (Compl. [Docket No. 1]). Because these Defendants have not yet participated substantively in any motion practice, have not argued or briefed any arguments for the Court regarding their state law claims, and because Plaintiff has remedies available to her in state court, the Undersigned recommends that this Court decline to exercise supplemental jurisdiction over the remaining state law claims, as no federal question or interest exists over the remaining three Defendants or Plaintiffs claims. See Farris v. Exotic Rubber and Plastics of Minnesota, Inc., 165 F. Supp. 2d 916 (D. Minn. 2001) (declining to exercise supplemental jurisdiction over a plaintiff's remaining state law claims after dismissing the plaintiff's federal claim on summary judgment, where resolution of the remaining claims depended solely on a determination of state law).

## V. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Kroschel Township of Minnesota's Motion for Summary Judgment, [Docket No. 37], be **GRANTED**, and that all of Plaintiff's claims against the Township be **DISMISSED with prejudice**, as set forth above;

2. Defendant Kanabec County of Minnesota's Motion for Summary Judgment, [Docket No. 45], be **GRANTED**, and that all of Plaintiff's claims against the County be **DISMISSED with prejudice**, as set forth above;

3. Defendant Norman Loren's Motion for Summary Judgment, [Docket No. 56], be **GRANTED**, and that all of Plaintiff's claim against Defendant Loren be **DISMISSED with prejudice**, as set forth above;

4. Plaintiff Amy S. Radford's Counter Motion for Summary Judgment, [Docket No. 65], be **DENIED**; and

5. Plaintiff's remaining claims against Defendants Terry Roemhildt, Rhys Roemhildt, and Airizes Miller be **DISMISSED without prejudice** for denial of supplemental jurisdiction, as set forth above.

Dated: December 30, 2013                              s/Leo I. Brisbois
                                                      The Honorable Leo I. Brisbois
                                                      United States Magistrate Judge

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 13, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by January 27, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.